## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EASTERN BAND OF** | ) | |
| **CHEROKEE INDIANS** | ) | |
| 88 Council House Loop | ) | |
| (P.O. Box 455) | ) | |
| Cherokee, NC  28719 | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES OF AMERICA;** | ) | |
| | ) | |
| **KATHLEEN SEBELIUS**, in her official capacity | ) | |
| as Secretary, | ) | |
| U.S. Department of Health & Human Services | ) | |
| 200 Independence Ave, S.W. | ) | |
| Washington, DC 20201 | ) | |
| | ) | |
| **YVETTE ROUBIDEAUX**, in her official capacity | ) | |
| as Director, | ) | Civil Action No. 1:13-cv-00723 |
| Indian Health Service | ) | |
| 801 Thompson Avenue, Ste. 400 | ) | |
| Rockville, MD 20852-1627 | ) | **COMPLAINT** |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Served:      The Honorable Eric H. Holder, Jr.
             Attorney General of the United States
             U.S. Department of Justice
             950 Pennsylvania Avenue, NW
             Washington, D.C.   20530-0001

             The Honorable Ronald C. Machen, Jr.
             United States Attorney for the District of Columbia
             Judiciary Center Building
             555 Fourth Street, NW
             Washington, D.C.   20530

## COMPLAINT

The Plaintiff, for its cause of action against the Defendants named above, alleges as follows:

### INTRODUCTION AND SUMMARY

1.        This is a suit against the United States for breach of contract and statute by the Indian Health Service ("IHS"), an agency in the Department of Health and Human Services ("HHS").  Plaintiff, the Eastern Band of Cherokee Indians ("the Tribe"), seeks money damages under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq*. ("CDA"), based on the Secretary's repeated violations of the Tribe's contractual and statutory right to the payment of full funding of contract support costs ("CSC") for contracts entered under the Indian Self-Determination and Education Assistance Act ("ISDEAA"), Pub. L. No. 93-638, as amended, 25 U.S.C. § 450 *et seq*.

2.        Defendants breached the Tribe's contracts by failing to pay the full CSC owed to the Tribe under the ISDEAA and the Tribe's Compact and funding agreement ("FA") for fiscal year 2006.

3.        Defendants paid only a portion of the CSC owed under the Tribe's contracts, due to their misapplication of federal contracting and appropriations law.  In the appropriations acts each year, Congress imposed "caps" on aggregate CSC spending, which Defendants believed allowed them to underfund the Tribe's contracts.  This resulted in CSC "shortfalls," which the IHS calculated for fiscal year 2006 and reported to Congress.

4.        The Supreme Court found Defendants' practice unlawful, holding that the IHS is responsible for fully funding ISDEAA contracts—including all of the required CSC—without regard to congressionally instituted caps on CSC funding as a whole.  *Salazar v. Ramah Navajo Chapter*, 567 U.S. ___, 132 S. Ct. 2181 (2012).  As long as there are sufficient appropriations to

cover an individual contract's costs—even if there is not enough to fully fund all contracts—the Government's obligation to fully pay each individual contract remains.  In the Court's words, "The agency's allocation choices do not affect the Government's liability in the event of an underpayment."  *Ramah*, 132 S. Ct. at 2192, quoting *Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 641 (2005).

5.      The Tribe's claims are indistinguishable from those in *Ramah*.  The IHS received sufficient funds in 2006 to fully pay the Tribe's CSC, although Congress limited the aggregate amount of funding for all CSC at the agency.  The shortfall in CSC owed to the Tribe is a result of the agency's allocation choices, but the Government remains liable for payment of the full amount, plus additional damages arising from the failure to pay the full amount.

## JURISDICTION AND VENUE

6.      This controversy arises under agreements between the United States and the Tribe for operation of Indian health programs carried out pursuant to the ISDEAA.  This Court has subject matter jurisdiction under the CDA, 41 U.S.C. § 7104(b), and the ISDEAA.  *See* 25 U.S.C. § 450m-1(a) (providing original jurisdiction to United States district courts, concurrent with the Court of Federal Claims, over civil actions for money damages arising under ISDEAA contracts).

7.      On September 27, 2012, the Tribe requested an IHS contracting officer's decision on claims for underpaid CSC for fiscal year 2006.  The Tribe has received no decision from the IHS on this request.  Since the IHS has not issued a decision on this claim within a reasonable time, it is deemed denied.  41 U.S.C. § 7103(f)(5).  Accordingly, the Tribe has exhausted its administrative remedies, as required by the CDA.  41 U.S.C. § 7104(b).

8.      This Court has jurisdiction to review the IHS's decision denying the Tribe's claims

for fiscal year 2006 under the CDA and Section 110 of the ISDEAA.  41 U.S.C. § 7104(b); 25

U.S.C. § 450m-1(a); 25 U.S.C. § 450m-1(d).

9.      Venue is proper because Defendant Kathleen Sebelius in her official capacity as

Secretary of HHS is located in the District of Columbia.

## PARTIES

10.     Plaintiff Eastern Band of Cherokee Indians is a federally recognized Indian tribe

located in western North Carolina.  The Tribe provides various health care services under its

Health and Medical division, including community and public health services, nutritional and

substance abuse counseling, diabetes care, dental services, women's wellness, and family-based

medical care at the Cherokee Hospital.  The Tribe has contracted with the IHS under the

ISDEAA to carry out these functions.

11.     Defendant United States is a party to every ISDEAA agreement, including the

Tribe's.  25 U.S.C. § 450*l*(c), Model Agreement § 1(a)(1); Title V Compact of Self-Governance

Between the Eastern Band of Cherokee Indians and the United States Department of Health and

Human Services ("Compact").

12.     Defendant Kathleen Sebelius is the Secretary of Health and Human Services, and

is charged by law with the responsibility for implementing the ISDEAA, and other health laws

benefiting Indians, on behalf of the United States.  25 U.S.C. § 450f(a)(1); 25 U.S.C. § 450b(i);

42 U.S.C. § 2001.  Defendant Sebelius is sued in her official capacity.

13.     Defendant Yvette Roubideaux is the Director of the IHS, the primary agency that

carries out HHS's responsibility for implementing the ISDEAA, and other health laws benefiting

Indians, on behalf of the United States.  *See* 25 U.S.C. § 1661.  Defendant Roubideaux is sued in her official capacity.

## STATEMENT OF FACTS

### The ISDEAA

14.     During the year at issue in this appeal, fiscal year 2006, the Tribe provided health care services to eligible Indians and other eligible beneficiaries pursuant to agreements entered into with the Secretary of the HHS and the IHS under Title V of the ISDEAA, 25 U.S.C. § 458aaa *et seq*.

15.     The ISDEAA authorizes the Tribe, other tribes, and tribal organizations to assume responsibility to provide programs, functions, services and activities ("PFSAs") that the Secretary would otherwise be obligated to provide.  In return, the Secretary must provide the Tribe two types of funding under Section 106(a) of the ISDEAA: (1) "program" funds, the amount the Secretary would have provided for the PFSAs had the IHS retained responsibility for them, *see* 25 U.S.C. § 450j-1(a)(1), sometimes called the "Secretarial amount" or the "106(a)(1) amount"; and (2) "contract support costs," the reasonable administrative and overhead costs associated with carrying out the PFSAs, *see* 25 U.S.C. § 450j-1(a)(2) and (3).  *See also* 25 U.S.C. § 458aaa-15(a) (Title V provision stating that "[a]ll provisions of sections . . . 450j-1(a) through (k) . . . of [Title 25 U.S.C.] . . . shall apply to compacts and funding agreements authorized by this part").

16.     There are three types of CSC: (1) start-up costs, which are one-time costs to plan, prepare for and assume operation of a new or expanded PFSA, *see* 25 U.S.C. § 450j-1(a)(5) & (6); (2) indirect costs, costs incurred for a common or joint purpose benefiting more than one PFSA, such as administrative and overhead costs, *see* 25 U.S.C. § 450j-1(a)(2); and (3) direct

CSC ("DCSC"), expenses directly attributable to a certain PFSA but not captured in either the indirect cost pool or the 106(a)(1) amount, such as workers compensation insurance or other expenses the Secretary would not have incurred because, for example, the Government is self-insured, *see id.* 25 U.S.C. § 450j-1(a)(3)(A).

17.     The ISDEAA requires that, upon approval of the contract, "the Secretary <u>shall add to the contract the full amount of funds</u> to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC.  25 U.S.C. § 450j-1(g) (emphasis added); *see also Cherokee Nation*, 543 U.S. at 634 ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").  As noted above, one component of the required CSC under section 106(a) is indirect cost funding, which covers administrative and overhead costs, allowing all program funds to be used to provide health care PFSAs for tribal members and other beneficiaries.

18.     For the Tribe, the "full amount" of indirect costs was (and is) determined by multiplying a negotiated indirect cost rate by the amount of the direct cost base.  The Tribe's indirect cost rate, direct cost base, resulting indirect cost requirement, and any shortfall in funding were memorialized in the CSC "shortfall reports" IHS prepared for Congress each year in accordance with the ISDEAA, as discussed further below.  *See* 25 U.S.C. § 450j-1(c).

The CSC Shortfalls and the <em>Ramah</em> Case

19.     Despite the ISDEAA's requirements that the Secretary shall pay the full amount of CSC, the IHS has not done so.  Since at least fiscal year 1993, IHS has underpaid the vast majority of ISDEAA contractors, as documented in the agency's annual CSC "shortfall reports" to Congress.  IHS prepares the shortfall reports in compliance with ISDEAA section 106(c),

which requires that the agency submit to Congress an annual report on the implementation of the

ISDEAA, including:

> (1)  an accounting of the total amounts of funds provided for each program and the budget activity for direct program costs and contract support costs of tribal organizations under self-determination;
> (2)  an accounting of any deficiency in funds needed to provide required contract support costs to all contractors for the fiscal year for which the report is being submitted . . . .

25 U.S.C. § 450j-1(c).  Each IHS Area Office, including the Nashville Area (where the Tribe is

located), prepares a shortfall report that shows how much each tribe and tribal organization in the

Area was paid in CSC for the fiscal year, how much IHS would have paid had Congress

appropriated sufficient CSC funding to pay every ISDEAA contractor in full, and the resulting

shortfall.  The reports reflect the data in the contracts, funding agreements, and indirect cost rate

agreements of tribal contractors.

20.    Though the form of the shortfall reports has varied somewhat over the years, the

essential information in the reports used to calculate the shortfalls has remained the same: the

total CSC requirement minus the actual CSC paid by the IHS equals the CSC shortfall, which is

reported to Congress.

21.    Prior to fiscal year 1998, Congress imposed no statutory restriction on availability

of CSC, but IHS limited its payment to the amounts recommended in congressional committee

reports.  In 2005, the U.S. Supreme Court held this practice unlawful, ruling that the

appropriations available to pay tribes the full CSC due under section 106(a) and their contracts

included the IHS's entire unrestricted lump-sum appropriation.  *Cherokee Nation*, 543 U.S. at

642-43 (2005).  The Court held that IHS should have reprogrammed funds to pay the Cherokee

Nation the full CSC due under its contracts.

22.     Despite the *Cherokee* ruling, Defendants continued their practice of paying less than full CSC to ISDEAA contractors. Defendants justified the systematic underpayment of CSC by pointing to the CSC spending "caps" Congress has placed in the appropriations acts beginning in fiscal year 1998. *See, e.g.*, Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, 112 Stat. 2681, 2681–279 (1998) ("not to exceed $203,781,000 shall be for payments to tribes and tribal organizations for contract or grant support costs associated with [ISDEAA] contracts").

23.     In 2012, the U.S. Supreme Court considered the Government's responsibility to fully fund CSC during years when Congress placed a cap on the amount of funding available for CSC.  Echoing its reasoning in *Cherokee*, the Court held that—even if Congress appropriates insufficient funds to cover the aggregate amount due to every contractor, but enough to pay any individual contractor's CSC—the Government is obligated to pay each contractor's CSC in full. *Ramah*, 132 S. Ct. at 2186.

24.     The Court explicitly rejected arguments that the government is not liable for full CSC because Congress did not appropriate sufficient funding for all CSC, and that the ISDEAA states that the Secretary "is not required to reduce funding for programs, projects, or activities serving a tribe to make funds available to another tribe." *Ramah*, 132 S. Ct. at 2192, quoting 25 U.S.C. § 450j-1(b).  The Court found this idea was "inconsistent with ordinary principles of Government contracting law," and that the "agency's allocation choices do not affect the Government's liability in the event of an underpayment." *Id.*

25.     The Tribe was one of the tribal contractors underpaid in FY 2006 as a result of IHS's allocation choices.  According to the agency's own CSC shortfall report, the Tribe suffered

a significant CSC underpayment in fiscal year 2006. Despite having a CSC requirement of $5,241,021, the IHS paid only $4,014,931 in CSC, resulting in a shortfall of $1,226,090.

26.     The Tribe's claim includes the above "shortfall claim" in the amount reported by HHS for FY 2006, but also additional claims described below.

Indirect Costs on Unpaid Direct CSC

27.     The IHS CSC shortfall reports discussed above break out the shortfalls into underpayments of direct CSC and, in a separate column, indirect CSC. As discussed above, direct CSC is comprised of expenses directly attributable to a certain program or activity but not captured in either the indirect cost pool or the program amount due under section 106(a)(1). Direct CSC is part of the direct cost base, and thus generates indirect cost funding through application of the "rate-times-base" method described in paragraph 18 above. *See* IHS, Indian Health Manual § 6-3.4.E (2007) ("The DCSC, along with other Section 106(a)(1) funds, will be considered part of the recurring base of the award.").

28.     Underpayments of direct CSC, therefore, lower the Tribe's indirect cost funding as well. The IHS shortfall reports, however, do not capture this additional indirect cost shortfall, because the agency added to the direct cost base column only the amount of direct CSC paid, not the amount from the "DCSC Negotiated" column.

29.     The unpaid indirect costs on unpaid direct CSC must also be considered as damages. This amount can be determined each year by multiplying the negotiated indirect cost rate by the direct CSC shortfall memorialized in that year's CSC shortfall report. For the Tribe in FY 2006, this underpayment amounted to $9,477.

### IPA/MOA Conversions

30.     The Tribe carries out its Compact and FA in part through federal employees provided under Intergovernmental Personnel Act ("IPA") Memoranda of Agreement ("MOA"). However, IHS failed to pay direct CSC on the salaries of these employees, both before and after their transfer from federal status, in violation of the ISDEAA.  As detailed in the Tribe's claim letter, using available figures on the number of IPA/MOA employees, the average cost of such employees, and a 15% direct CSC burden on salaries, this underpayment amounted to $115,185 in FY 2006.

### Indirect Cost Rate Miscalculation

31.     The shortfalls described above were exacerbated by IHS's failure to adjust the Tribe's indirect cost rate to account for systematic miscalculations on the part of the Department of Interior's National Business Center "NBC"), the cognizant federal agency that calculates the Tribe's single, government-wide indirect cost rate.  The NBC follows Office of Management and Budget Circular A-87, which states that indirect cost rates are calculated by dividing the indirect cost pool by the total amount of direct cost base funding for all programs the Tribe carries out, not just IHS programs.

32.     Often, other federal or state funders pay little or no indirect costs.  NBC's inclusion of these programs in the direct cost base inflated the denominator of the rate-making equation, resulting in a lower indirect cost rate.

33.     When determining the amount of indirect costs owed to the Tribe, IHS employed this "diluted" indirect cost rate, resulting in a systematic underpayment of indirect costs and making it impossible for the Tribe to carry out IHS programs at the Secretarial level as mandated by the ISDEAA.  The Tenth Circuit held this practice unlawful; the government is responsible

for fully funding a contractor's indirect costs.  *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455

(10th Cir. 1997).  However, rather than adjust the artificially low rate by removing non-paying

agencies from the direct cost base of the rate-making equation, IHS in the relevant year

employed the diluted NBC indirect cost rate, thus reducing the Tribe's indirect cost funding.

34.     As detailed in the Tribe's 2006 claim letter, the Tribe estimates that exclusion of

non-paying agencies from the base would have produced a corrected rate entitling the Tribe to

additional indirect cost funding of $397,751 in FY 2006.

Expectancy Damages: Lost Third-Party Revenues

35.     These described breaches of contract also damaged the Tribe through the loss of

third-party revenues.  The Tribe generates significant revenue from billing Medicaid, Medicare,

and private insurance for health care services provided with IHS funding under the Tribe's

ISDEAA agreements.

36.     As a result of IHS's underfunding of CSC in each year, the Tribe was forced to

divert program funds to cover fixed administrative and overhead expenses, reducing the amounts

available to provide health care services, some of which could have been billed to third parties.

The Tribe's third-party collection rate for each year can be determined by dividing the amounts

collected—which can be determined from the annual audit—by the total IHS program funding

for that year.  For example, in FY 2006, for every dollar of IHS funding spent, the Tribe

recovered 34 cents in third-party billings—revenue used to provide further health care services to

members of the Tribe's constituent tribes and other eligible beneficiaries.  The amount of lost

third-party revenues for each year can be estimated by multiplying that year's collection rate by

the CSC shortfall.  For FY 2006, this figure amounts to $597,465.  *See Ramah Navajo School*

*Bd. v. Sebelius*, No. 6:07-cv-00289, at 62 (D.N.M., May 9, 2013) (approving similar calculation

- 11 -

as "a reasonable and satisfactory methodology for estimating lost third-party reimbursements" and awarding damages to ISDEAA contractor accordingly).[1]  Diversion of program money, and the resulting loss of third-party revenue, was a foreseeable consequence of the CSC underpayments.  IHS has long known that CSC shortfalls force tribes to divert program funds.[2]

## CAUSE OF ACTION – Breach of Contract

37.     All prior allegations are adopted by reference.

38.     The Tribe's Compact and FA incorporate the statutory duty to fully fund CSC.  25 U.S.C. § 450j-1(a) & (g); *id*. § 458aaa-7(c) (section 508(c) of Title V, incorporating payment provisions of § 450j-1(a)); *see also* Compact, Art. II § 3 (promising payment in accordance with section 508).  This duty was affirmed by the Supreme Court in *Ramah*, which other courts have followed.  Despite this statutory and contractual duty, during the years in question, the IHS failed to provide the full funding due under the Contract.

39.     Instead, the IHS paid significantly less than its full CSC requirement in fiscal year 2006, as acknowledged in IHS's own shortfall report.  In doing so, the IHS violated the ISDEAA's requirement of full payment from available appropriations without regard to total appropriations or any congressionally imposed aggregate caps, as affirmed by the Supreme Court in *Ramah*, and breached its agreements with the Tribe, which incorporate the full-funding requirement of section 106(a), 25 U.S.C. § 450j-1(a).

---

[1] *Available at* http://www.nmcourt.fed.us/Drs-Web/view-file?unique-identifier=0005253589-0000000000.

[2] *See, e.g.*, U.S. Gov't Accountability Office, GAO-99-150, Indian Self-Determination Act: Shortfalls in Indian Contract Support Costs Need to Be Addressed 40-41 (1999) (describing use of medical program resources to cover CSC shortfalls).

<u>Claim</u>

40.     As indicated in the IHS's own shortfall report, the Tribe's CSC requirement for

2006 was $5,421,021, yet the IHS paid only $4,014,931.  Therefore, the Tribe asserts a claim

under the ISDEAA and the Contract in the amount of $1,226,090, plus additional damages as

specified in the 2006 claim letter: $9,477 for indirect costs on unpaid direct CSC, $115,185 for

unpaid direct CSC on IPA/MOA conversions, $397,751 for indirect cost rate miscalculations,

and $597,465 for lost third-party revenue, for a total FY 2006 claim of **$2,345,968**.

### PRAYER FOR RELIEF

41.     The Plaintiff therefore requests that this Court:

A.     Award the Tribe **$2,345,968** in damages, as detailed in paragraph 40 above.

B.     Award such other damages as may be proven in this action;

C.     Order the payment of interest on these claims pursuant to the CDA, 41 U.S.C. §

7109, and the Prompt Payment Act, Chapter 39 of Title 31, United States Code;

D.     Award the Tribe its attorney fees and expenses pursuant to the Equal Access to

Justice Act, 28 U.S.C. § 2412 and 25 U.S.C. § 450m-1(c), and other applicable law; and

E.     Grant the Tribe such other and further relief as the Court deems appropriate.


Respectfully Submitted,

  s/ Caroline Mayhew
Caroline Mayhew (DC Bar No. 1011766)
Hobbs, Straus, Dean, & Walker LLP
2120 L St. NW, Suite 700
Washington, DC  20037
202-822-8282 (Tel.)
202-296-8834 (Fax)

Geoffrey D. Strommer, *pro hac vice pending*
Stephen D. Osborne, *pro hac vice pending*
Hobbs, Straus, Dean & Walker, LLP
806 SW Broadway, Suite 900
Portland, OR 97205
503-242-1745 (Tel.)
503-242-1072 (Fax)


Attorneys for the Eastern Band of Cherokee Indians.

DATED: May 16, 2013.